**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Toni Therrien,<br><br>         Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>         Defendant. | No. CV-24-02025-PHX-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Toni Therrien's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act (the "Act"). Plaintiff filed a Complaint, (Doc. 1), and an Opening Brief, (Doc. 9), seeking judicial review of that denial. Defendant Commissioner of Social Security Administration (the "Commissioner") filed an Answering Brief, (Doc. 13), to which Plaintiff replied, (Doc. 14). The Court has reviewed the parties' briefs, the Administrative Record, (Docs. 7–8 ("AR")), and the Administrative Law Judge's ("ALJ") decision, (AR 33–49), and will affirm the ALJ's decision for the reasons addressed herein.

**I.     BACKGROUND**

On April 28, 2021, Plaintiff filed an Application for SSDI benefits and Supplemental Security Income ("SSI") pursuant to Title II and Title XVI of the Act, alleging disability commencing on June 6, 2019. (AR 253–60.) The Commissioner denied Plaintiff's claims on January 20, 2022, and denied Plaintiff's request for reconsideration on October 28, 2022. (AR 78–95, 98–121.) A hearing was held before ALJ Randolph E.

Schum on August, 23, 2023. (AR 61–75.) After considering the medical evidence and opinions, the ALJ determined that Plaintiff suffered from the following severe impairments: asthma/allergic rhinitis, lumbar scoliosis, fibromyalgia, rheumatoid arthritis, obesity, anxiety, and depression—none of which met or medically equaled a listed impairment. (AR 36.) Despite Plaintiff's impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) with some limitations. (AR 38.) The ALJ denied Plaintiff's application on October 19, 2023. (AR 48–49.) Thereafter, the Appeals Council denied Plaintiff's request for review of the ALJ's decision—making it the final decision of the Commissioner. (AR 1–3.) Plaintiff now seeks this Court's review pursuant to 42 U.S.C §§ 405(g), 1383(c)(3). (Doc. 1.)

## II.    LEGAL STANDARDS

In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). An ALJ's factual findings "'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. § 405(g)). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Court will not reverse for harmless errors. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines

whether the claimant has a severe medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III.   DISCUSSION**

Plaintiff alleges that the ALJ (1) failed to identify a significant number of jobs within Plaintiff's RFC, and (2) failed to give clear and convincing reasons for rejecting Plaintiff's need for a cane. (Doc. 9 at 1.) The Court disagrees for the following reasons.

**A. The ALJ Identified a Significant Number of Jobs Within Plaintiff's RFC**

At step five of the sequential evaluation process, the ALJ must determine whether a claimant can engage in "substantial gainful work that exists in the national economy." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). Work is considered as existing in the national economy when: (1) its requirements can be met by the claimant with his or her physical or mental abilities and vocational qualifications; and (2) it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a), (b). Plaintiff argues the ALJ erred at this step. (Doc. 9 at 5–6.)

Based on the vocational expert's ("VE") testimony, the ALJ concluded "the claimant was capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 48.) Specifically, the VE testified that

the Plaintiff—based on her age, education, work experience, and RFC—could perform occupations such as housekeeping cleaner, sample distributor, and order caller. *See Osenbrock*, 240 F.3d at 1162–63 ("Where the testimony of a VE is used at Step Five, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy.") The ALJ agreed. (AR 48.)

Plaintiff argues that housekeeping cleaner and sample distributor duties conflict with her RFC. (Doc. 9 at 5–6.) As noted, the ALJ determined Plaintiff had the RFC to perform light work but with some exceptions. These exceptions were "she should never climb ropes, ladders or scaffolds" and "should avoid concentrated exposure to temperature extremes of hot and cold, wetness, humidity, fumes, odors, dust, and gases, unprotected heights and moving and dangerous machinery." (AR 38.)

1. *Housekeeping Cleaner*

The ALJ concluded that housekeeping cleaner was a "representative[] job in the national economy" the Plaintiff was "capable of working" given the information in the Dictionary of Occupational Titles ("DOT"). (AR 48.) The DOT describes the requirements of this job as:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets.

*DOT*, 323.687-014 (*Cleaner, Housekeeping*), 1991 WL 672783 (1991). In addition to these responsibilities, the DOT includes "other duties as described under CLEANER (any industry) I Master Title." *Id.* There, "cleaner" is defined as one who, among other things, "[d]usts furniture and equipment." *DOT*, (*Cleaner I*), 1991 WL 645969 (1991). Plaintiff points out, "[i]t is impossible to avoid exposure to dust while actively dusting." (Doc. 9 at 5.) The Court agrees.

"When there is an apparent conflict between the vocational expert's testimony and

the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017) (emphasis omitted) (quoting *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015)). "For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). This means the testimony is at odds with the DOT's listed job requirements that are "essential, integral, or expected." *Id.*

The Court finds, based on the DOT and "common experience," that dusting is an expected requirement of a housekeeping cleaner. *See Lameear*, 865 F.3d at 1205–06 (citing the court's "common experience" to find a conflict where a VE testified that the claimant could perform the job of an office helper, mail clerk, or parking lot cashier but the claimant could not use his left hand). Thus, the conflict is apparent. Accordingly, the ALJ erred when he failed to inquire into and resolve the inconsistency. *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.").

Nevertheless, the Court will not reverse an ALJ's decision if the error is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Harmless error exists when it is clear from the record that the ALJ's error was "inconsequential to the ultimate nondisability determination." *Robins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)). Therefore, the Court must determine whether the remaining jobs—sample distributor and order caller—present substantial gainful work that exists in the national economy within Plaintiff's RFC.

2. *Sample Distributor and Order Caller*

Plaintiff argues that a sample distributor would require "constant exposure to weather," which would exceed her RFC limitation to avoid "wetness and humidity." (Doc. 9 at 5–6.) Additionally, she asserts that the responsibilities would require her to use a vehicle, which she alleges conflicts with her RFC limitation to avoid moving and dangerous machinery. (Doc. 9 at 6.) The Commissioner contends that both the DOT and the Selected Characteristics of Occupations in the Revised Dictionary of Occupational Titles ("SCO) refute this conflict. (Doc. 13 at 7.) The Court agrees.

The DOT does not indicate wet or humid conditions for sample distributors. It describes a sample distributor's duties as: "Distributes advertising material, such as merchandise samples, handbills, and coupons, from house to house, to business establishments, or to persons on street, following oral instructions, street maps, or address lists." *DOT*, 230.687-010 (*Sample Distributor*), 1991 WL 672162, (1991). Additionally, the DOT explicitly states that wet and humid conditions are "Not Present" and "do[] not exist" for sample distributors. *Id.* Moreover, the SCO defines wet and humid environmental conditions as "[c]ontact with water or other liquids or exposure to *nonweather*-related humid conditions." Environmental Conditions, SCO Appendix D (emphasis added); *see also Flores v. Berryhill*, No. EDCV 17-0251-AS, 2017 WL 6734163, at *3 n.5 (C.D. Cal. Dec. 28, 2017) (citing the SCO and concluding that wet and humid conditions "do[] not include 'bad weather, such as thunderstorms'").

The DOT does not indicate that a sample distributor is exposed to moving and dangerous machinery. First, there is no requirement in the DOT's list of duties for sample distributors that mandates the use of any machinery, let alone a vehicle. Second, the DOT specifically states that moving mechanical parts are "Not Present" and "do[] not exist" in a sample distributor's environmental conditions. *DOT*, 230.687-010. Finally, the SCO defines work conditions with moving mechanical parts as "[e]xposure to possible bodily injury from moving mechanical parts of *equipment, tools, or machinery*." Environmental Conditions, SCO Appendix D (emphasis added). Such language invokes the safety-risks

associated with industrial workplaces—not the incidental use of a vehicle. *See Bermudez v. Astrue*, No. CV 09-08370 AGR, 2011 WL 997290, at *3 (C.D. Cal. March 21, 2011) (finding a conveyor line bakery occupation inconsistent with a restriction to avoid dangerous machinery).

For these reasons, the Court finds that the ALJ did not err in concluding that a sample distributor is consistent with Plaintiff's RFC because there is no obvious or apparent conflict between the duties of a distributor and the DOT. *See Gutierrez*, 844 F.3d at 808. Plaintiff does not argue that the duties of an order caller exceed her limitations. (Doc. 9 at 6.) Therefore, the Court must now determine if these two remaining occupations constitute a significant number of jobs in the national economy.

The Ninth Circuit has not created a "bright-line rule" for what amounts to a "'significant number' of jobs." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). For this reason, "a comparison to other cases is instructive." *Id.* In *Guiterrez v. Commissioner of Social Security*, 740 F.3d 519, 529 (9th Cir. 2014), the Ninth Circuit found that 25,000 national jobs "constitutes a significant number," though it was a "close call." Here, the national job estimate is 30,900: sample distributor (19,900), order caller (11,000). (AR 48.) Accordingly, there is substantial evidence to support the ALJ's finding that there is a significant number of jobs in the national economy within Plaintiff's age, education, work experience, and RFC—regardless of the housekeeping cleaner occupation. Thus, the ALJ's failure to resolve the Plaintiff's conflict with the duties of a housekeeping cleaner amounts to harmless error because it is "inconsequential to the ultimate nondisability determination." *See Robins*, 466 F.3d at 885 (quoting *Stout*, 454 F.3d at 1055).

**B. The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's Need for a Cane.**

At the ALJ hearing, Plaintiff testified that "she had extreme muscle pain and weakness from her fibromyalgia and required the use of a cane." (AR 39.) However, the ALJ did not include the need for a cane in Plaintiff's RFC limitations. (AR 38.) Plaintiff contends that the "ALJ's only reason for rejecting [her] need for a cane is, 'she has the

ability to ambulate without it.'" (Doc. 14 at 4 (quoting AR 46).) Therefore, according to the Plaintiff, the ALJ did not provide clear and convincing reasons for discrediting her testimony. The Commissioner disagreed, referencing multiple record citations from the ALJ's decision supporting the ALJ's rejection of Plaintiff's testimony.

In evaluating the credibility of a claimant's testimony, the ALJ must engage in a two-step analysis: (1) "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged;" and (2) "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). The ALJ here concluded that Plaintiff satisfied step one. (AR 45.) The Court now evaluates whether the ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony.

To ensure meaningful review, the ALJ must specifically identify the testimony from a claimant the ALJ finds not to be credible and explain what evidence undermines that testimony. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "[G]eneral findings are insufficient." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ must make findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958; *see also Tommasetti*, 533 F.3d at 1039.

Here, the ALJ noted that Plaintiff claimed she required a cane but found the limitation was "not entirely consistent with the medical evidence and other evidence in the record." (AR 40.) He highlighted the following medical records in support of this finding. In June 2022, a psychotherapy note stated that Plaintiff "reports her physical therapy has been going really well and she noticed she hasn't used her cane in a few months when prior she needed it everyday." (AR 42, 994.) In May 2023, a neurology examination found "five out of five strength throughout with normal muscle tone and bulk and an absence of

atrophy." (AR 45, 1081.) In that same record, the neurologist noted Plaintiff "has a cane but is able to ambulate without." (AR 45, 1092.) In April and July 2023, two records from Arizona Arthritis and Rheumatology Associates stated that Plaintiff was going to physical therapy twice a week and indicated that her gait was normal. (AR 43, 1125, 1237.) In June 2023, a different neurologist commented on Plaintiff's gait: "The patient is able to arise from a chair without hesitation. There is normal station, posture, and arm swing with good initiation. Toe and heel gait are normal. Tandem gait is normal." (AR 43, 1222.) Finally, the ALJ emphasized that Plaintiff, in her function report, described a "capacity to perform activities of daily living." (AR 45.) In that report, Plaintiff conceded she could "prepare simple meals," "perform household chores with breaks and assistance," drive a car, and shop in stores. (AR 39, 316–17.) Given this evidence, the ALJ concluded that "the medical findings did not support the existence of limitations greater than the above listed [RFC]." (AR 45.)

The Court finds that the ALJ provided clear and convincing evidence for discrediting Plaintiff's testimony that she required a cane. The ALJ identified multiple, specific medical records undermining Plaintiff's testimony such that the Court can conclude that the ALJ did not arbitrarily reject Plaintiff's claimed limitation. Accordingly, the Court affirms the ALJ's findings because they are supported by substantial evidence. *See Biestek*, 587 U.S. at 102 (2019).

## IV. CONCLUSION

Therefore,

**IT IS ORDERED** affirming the ALJ's October 19, 2023 decision.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 9th day of September, 2025.

_____
Honorable Susan M. Brnovich
United States District Judge